IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| OSMIN GONZALEZ SEGOVIA;<br>CORIN RUIZ,<br><br>    Plaintiffs,<br><br>v.<br><br>MERRICK B. GARLAND, ATTORNEY<br>GENERAL OF THE UNITED STATES;<br>ALEJANDRO MAYORKAS,<br>SECRETARY, DEPARTMENT OF<br>HOMELAND SECURITY; UR<br>JADDOU, DIRECTOR, U.S.<br>CITIZENSHIP AND IMMIGRATION<br>SERVICES; AND LOREN K. MILLER,<br>U.S. CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br>NEBRASKA SERVICE CENTER<br>DIRECTOR,<br><br>    Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO.<br>1:23-cv-1478-AT |

## **OPINION AND ORDER**

In this immigration case, Plaintiffs allege that Defendants have unreasonably delayed in adjudicating Plaintiff Segovia's I-601A provisional unlawful presence waiver application ("Waiver Application"), which has been pending for nearly two and a half years. Plaintiffs ask the Court to compel Defendants to adjudicate Segovia's Waiver Application. Defendants moved to dismiss, arguing that the Court lacks jurisdiction to review Plaintiffs' unreasonable delay claim, that Plaintiffs lack standing, and that Plaintiffs fail to state a claim.

Yet, for the reasons below, the Court finds that the Court has jurisdiction to review Plaintiffs' unreasonable delay claim, that Plaintiffs have standing, and that Plaintiffs state a plausible claim for relief. As a result, the Court **DENIES** Defendant's Motion to Dismiss [Doc. 6].

## I.   REGULATORY AND FACTUAL BACKGROUND

Before turning to the Plaintiffs' allegations, the Court broadly outlines the relevant regulatory and statutory framework, as it provides necessary context for the dispute here.

### A.   The Immigration Application at Issue: Form I-160A Provisional Waiver of Unlawful Presence

Under the Immigration and Nationality Act ("INA"), a noncitizen can apply for lawful permanent resident ("LPR") status based on his familial relationship to a U.S. citizen or LPR (among other reasons). *See* 8 U.S.C. § 1151. The application process is complex. One way to begin the process is for the U.S. citizen or LPR family member to file a Form I-130 Petition for Alien Relative on behalf of the noncitizen. *See* 8 U.S.C. §§ 1153; 1154; 8 C.F.R. § 204. If the United States Citizenship and Immigration Services ("USCIS") approves the I-130 Petition for Alien Relative, the noncitizen may then, as relevant here, apply for an immigrant visa with the consular office in his country of residence. *See* 8 U.S.C. §§ 1202(a); 1255(a); 22 C.F.R. § 42.61.[1] To obtain an immigrant visa, the noncitizen must

---

[1] Alternatively, the noncitizen could apply for adjustment of status while in the U.S. if he is eligible under 8 U.S.C. § 1255(a). Plaintiff Segovia here is not eligible under § 1255(a).

demonstrate that he is not "inadmissible" to receive a visa or be admitted to the United States for any reason listed in 8 U.S.C. § 1182.

One reason for inadmissibility under 8 U.S.C. § 1182 is accrued unlawful presence. *See* § 1182(a)(9)(B)(i)(II) (explaining that an individual who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years" of the date of departure from the U.S. "is inadmissible").

That said, Congress provided for a waiver of this accrued unlawful presence inadmissibility under the INA at 8 U.S.C. § 1182(a)(9)(B)(v) ("the Waiver Provision"). This Waiver Provision gives USCIS discretion to waive accrued unlawful presence inadmissibility where the noncitizen is a spouse or child of a U.S. citizen or LPR, and where USCIS's refusal to admit the noncitizen would result in "extreme hardship" to that spouse or child:

> The Attorney General[2] has sole discretion to waive [the accrual of unlawful presence] in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause.

---

[2] While the statute refers to the Attorney General, Congress later transferred enforcement of immigration laws to the Secretary of Homeland Security under the Homeland Security Act of 2002. *See* Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002). The Homeland Security Act created USCIS as a division within the Department of Homeland Security that is responsible for the administration of immigration benefit applications. *See USCIS Chapter 1 - Purpose and Background*, https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-1#:~:text=On%20March%201%2C%202003%2C%20USCIS,of%20Homeland%20Security%20(DHS).

8 U.S.C. § 1182(a)(9)(B)(v).

But, as noted above, in proceeding through the relevant steps, the noncitizen must, after receiving approval of the I-130 Petition for Alien Relative, apply for an immigrant visa. In applying for an immigrant visa, the noncitizen must apply and interview in person with the consular office in his home country of residence. *See* 22 C.F.R. § 42.61 (noting that an individual "applying for an immigrant visa shall make application at the consular office having jurisdiction over [his] place of residence . . . an [individual] physically present in the United States shall be considered to be a resident of the area of his or her last residence prior to entry into the United States"); *see also* 9 FAM 504.1-3 (outlining application processing). So, in applying for an immigrant visa, the noncitizen must depart the United States for consular processing.

Because a noncitizen who has accrued unlawful presence and then departed the U.S. is inadmissible for an immigrant visa, he must obtain his waiver of inadmissibility *before* his immigrant visa application can be approved. *See* 8 U.S.C. § 1182(a)(9)(B)(i) and (v). In the past, a noncitizen in this situation could not apply for a waiver of inadmissibility until *after* he appeared for his visa interview abroad and had been officially determined "inadmissible" by a consular officer. *See* 22 C.F.R. § 42.62(a)-(b). Accordingly, these various requirements created situations in which noncitizens departed the U.S. for consular interviews and were not permitted to return for long periods while awaiting waivers of inadmissibility, thereby resulting in extensive periods of family separation.

To address this problem, the Department of Homeland Security ("DHS"), in 2013, promulgated regulations allowing certain immediate relatives of U.S. citizens to request *provisional* unlawful presence waivers *before* departing the United States for their consular hearings. *See* 8 C.F.R. § 212.7(e). Allowing USCIS to grant a noncitizen's provisional unlawful presence waiver *before* the noncitizen's departure from the U.S. ensures that an immigrant visa can be issued without delay. *See Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives*, 78 Fed. Reg. 536 (Jan. 3, 2013) ("DHS anticipates that these changes will significantly reduce the length of time U.S. citizens are separated from their immediate relatives who engage in consular processing abroad.").[3] A noncitizen requests such a provisional unlawful presence waiver by filing a Form I-601A Waiver Application.

To be approved for a provisional unlawful presence waiver, a noncitizen must establish by a preponderance of the evidence, first, that he is eligible under the Waiver Provision, 8 U.S.C. § 1182(a)(9)(B)(v), and specifically that USCIS's refusal of his admission would result in extreme hardship to his spouse or parent. Second, the noncitizen must establish that he merits "a favorable exercise of [the Secretary's] discretion." 8 C.F.R. § 212.7(e)(7). The noncitizen must also pay the

---

[3] In 2016, DHS expanded the availability of this provisional unlawful presence waiver program for other noncitizens as well. *See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility*; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016) ("Having an approved provisional waiver helps facilitate immigrant visa issuance at DOS, streamlines both the waiver and the immigrant visa processes, and reduces the time that applicants are separated from their U.S. citizen or LPR family members, thus promoting family unity.").

relevant $960 filing fee for a provisional unlawful presence waiver, *see* 8 C.F.R. § 106.2(25) (listing fee), and meet the other requirements listed in 8 C.F.R. § 212.7(e) (requiring the noncitizen to, for example, provide biometrics to USCIS, depart the U.S. to obtain his immigrant visa, and pay the immigrant visa processing fee).

USCIS has exclusive jurisdiction to grant a provisional unlawful presence waiver. 8 C.F.R. § 212.7(e)(1). The regulations also provide that "USCIS *will* adjudicate a provisional unlawful presence waiver application in accordance with this paragraph." 8 C.F.R. § 212.7(e)(8) (emphasis added). If USCIS finds that the noncitizen is not eligible for the provisional waiver or determines "in its discretion that a waiver is not warranted, USCIS *will* deny the waiver application." *Id*. (emphasis added). If a noncitizen's provisional waiver is approved, it only becomes effective after the noncitizen has departed the U.S., appeared for an immigrant visa interview, and has been determined to be otherwise eligible for an immigrant visa by the Department of State in light of the approved provisional unlawful presence waiver. 8 C.F.R. § 212.7(e)(12).

With that framing, the Court turns to the particular facts here.

### B.   Plaintiffs' Complaint

Plaintiffs Osmin Segovia and Corin Ruiz are a married couple. Segovia is a native and citizen of El Salvador. (Compl., Doc. 1 ¶ 12.) Segovia entered the United States in 2003 and has remained ever since. (*Id*.) He currently lives in Marietta, with his wife, Corin Ruiz. (*Id*.) Ruiz is a U.S. citizen. (*Id*.) Segovia and Ruiz have three children who are all U.S. citizens. (*Id*.) Segovia runs his own drywall

business. (*Id.*) Plaintiffs allege that Ruiz and the couple's children depend entirely on Segovia and his business for financial support and that Ruiz devotes her time to family responsibilities. (*Id.* ¶ 4) ("The career and educational opportunities, access to adequate healthcare, and safety of not only [Segovia], but his entire family, depend upon the adjudication of his I-601A application."). Segovia has accrued unlawful presence in the U.S. that renders him inadmissible for permanent residence and ineligible for an immigrant visa, absent a waiver of this accrued unlawful presence inadmissibility.

Plaintiffs Segovia and Ruiz seek to obtain legal permanent residence for Plaintiff Segovia through the family-based immigration process described above. In pursuit of this goal, Plaintiff Ruiz submitted a Petition for Alien Relative (Form I-130) on behalf of Segovia. (*Id.* ¶ 3.) On June 23, 2021, USCIS approved Plaintiff Ruiz's I-130 Petition. (*Id.*) A few months later, on October 11, 2021, Plaintiff Segovia submitted his I-601A provisional unlawful presence waiver application ("Waiver Application"). (*Id.* ¶ 2.)

Defendants have not ruled on Plaintiff Segovia's Waiver Application in the nearly two and a half years (over 29 months) since he filed it. (*Id.* ¶ 3.) During that time, USCIS has not requested that Plaintiff Segovia provide any additional information. (*Id.* ¶ 15.) In October 2021, when Segovia's Waiver Application was filed, USCIS's average processing time for such applications was less than two years (from filing to adjudication). (*Id.* ¶ 18.) In April 2023, when Plaintiffs filed their Complaint, the average processing time was 36 months. (*Id.* ¶ 19.) Now, the

average processing time is 43.5 months. *See USCIS Check Case Processing Times* https://egov.uscis.gov/processing-times/.

In light of this delay, Plaintiffs filed a mandamus complaint, asking the Court to compel Defendants to adjudicate Segovia's I-601A Waiver Application. Defendants move to dismiss, arguing that the Court lacks jurisdiction to compel such action, that Plaintiffs lack standing, and that Plaintiffs fail to state a claim.

## II.   LEGAL STANDARD

Defendants move to dismiss for lack of jurisdiction under Federal Rule 12(b)(1) and for failure to state a claim under Federal Rule 12(b)(6).

### A.   Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a case if no subject matter jurisdiction exists. The motion may be asserted on either facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citations omitted). A facial attack on a complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purpose of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation omitted). Alternatively, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

8

Here, Defendants present a facial attack on the Complaint, arguing that Plaintiffs have not sufficiently alleged a basis of subject matter jurisdiction on the face of the Complaint.

### B.    Rule 12(b)(6) Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-556 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic*, 550 U.S. at 555); Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

## III.  DISCUSSION

Defendants make three arguments for dismissal: (1) the Court lacks jurisdiction to review Plaintiffs' unreasonable delay claim; (2) Plaintiffs lack standing; and (3) Plaintiffs fail to state a claim.

### A.    Whether the Court Has Jurisdiction to Review Plaintiffs' Unreasonable Delay Claim

In their "Complaint for Writ of Mandamus," Plaintiffs assert jurisdiction as follows:

> This action arises under the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1255, and 8 U.S.C. § 1254. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question),

the INA, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361.

(Compl., Doc. 1 ¶ 7.)

The APA provides for judicial review of certain activity of administrative agencies. *See* 5 U.S.C. § 702 (explaining that a person "suffering legal wrong because of agency action" or "aggrieved by agency action" is entitled to judicial review). In evaluating such agency action, the reviewing court "*shall* . . . compel agency action unlawfully withheld *or unreasonably delayed.*" *Id.* § 706(1) (emphasis added).

While review of agency action is therefore generally permitted under the APA, there are two exceptions. The APA does not permit judicial review: (1) where "statutes preclude judicial review," or (2) where "agency action is committed to agency discretion by law." *See* 5 U.S.C. § 701(a).

While the APA does not, on its own, confer subject matter jurisdiction, it provides a federal cause of action and thus allows "federal judges to review agency action under federal question jurisdiction" pursuant to 28 U.S.C. § 1331. *Bouarfa v. Sec'y, Dep't of Homeland Sec.*, 75 F.4th 1157, 1161 (11th Cir. 2023) (quoting *Perez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 774 F.3d 960, 965 (11th Cir. 2014)). Accordingly, where the APA permits judicial review, the Court has jurisdiction to review the claims under 28 U.S.C. § 1331. But where the APA does not permit

judicial review for one of the two reasons above, there is no federal cause of action[4]

and thus no jurisdiction.[5]

Here, Defendants argue that judicial review is precluded both because the

Waiver Provision of the INA precludes judicial review and because USCIS's actions

are committed to agency discretion by law.

> **1.    Whether the Waiver Provision Precludes
> Judicial Review and Strips the Court of
> Jurisdiction**

Plaintiff Segovia seeks an I-601A Waiver under the Waiver Provision of the

INA. This provision provides:

> The Attorney General has sole discretion to waive [the accrual of
> unlawful residence] in the case of an immigrant who is the spouse or
> son or daughter of a United States citizen or of an alien lawfully
> admitted for permanent residence, if it is established to the
> satisfaction of the Attorney General that the refusal of admission to
> such immigrant alien would result in extreme hardship to the citizen
> or lawfully resident spouse or parent of such alien. **No court shall
> have jurisdiction to review a decision or action by [USCIS]
> regarding a waiver under this clause.**

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Here, the parties agree that the

Court would not have jurisdiction to review any decision granting or denying

---

[4] Plaintiffs do not argue that the INA itself provides a cause of action.

[5] As to jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, courts have explained that: "where . . . a plaintiff invokes the Court's mandamus jurisdiction to compel action but not to direct the exercise of judgment or discretion, mandamus jurisdiction is coextensive with the remedies available under the APA." *Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1363 (N.D. Ga. 2021); *see also Singh v. Mayorkas*, 2024 WL 420124, at *2 (M.D. Tenn. Feb. 5, 2024) ("if the relief sought by plaintiffs through a writ of mandamus is essentially the same as that sought under the APA, the court may consider the claim under the APA.") (citing *Indep. Mining Co. v. Babbit*, 105 F.3d 502, 507 (9th Cir. 1997)). The Court therefore considers mandamus jurisdiction as coextensive with that provided under § 1331 by way of the APA.

Plaintiff Segovia's Waiver Application. Even so, Plaintiffs argue that this language does not strip the Court of jurisdiction to review their claim that Defendants have unreasonably delayed in *not adjudicating* Plaintiff Segovia's Waiver Petition at all. (*See* Pl. Resp., Doc. 8 at 7) (arguing that Defendants erroneously conflate a "nonreviewable challenge to a factual determination or ultimately discretionary judgment" with a "reviewable challenge to USCIS's delay and failure to process the application within a reasonable time after filing").

The issue of whether this Waiver Provision strips a court of jurisdiction to review an unreasonable delay claim has recently divided federal district courts across the country. Some courts have held that the statute's language strips the court of jurisdiction,[6] and other courts have found that it does not.[7] This issue is on appeal in at least four circuits: the Fourth, Seventh, Eighth, and Ninth. *See supra* n.6. The relevant language is contained in one sentence: "No court shall have jurisdiction to review a decision or action by [USCIS] regarding a waiver under this clause." § 1182(a)(9)(B)(v). Thus, the ultimate question is one of statutory

---

[6] *See, e.g.*, *Lovo v. Miller*, 2023 WL 3550167, at *3-4 (W.D. Va. May 18, 2023), *appeal docketed*, No. 23-1571 (4th Cir. May 26, 2023); *Mercado v. Miller*, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023), *appeal docketed*, No. 23-16007 (9th Cir. July 17, 2023); *Boulay v. Jaddou*, 2023 WL 9106843 (D. Neb. Nov. 2, 2023), *appeal docketed*, No. 23-3763 (8th Cir. Dec. 8, 2023); *Soni v. Jaddou*, --- F.Supp.3d ---, 2023 WL 8004292, at *2–4 (N.D. Ill. Nov. 17, 2023), *appeal docketed*, No. 23-3220 (7th Cir. Nov. 20, 2023); *Mafundu v. Mayorkas*, 2023 WL 5036142, at *5 n.2 (S.D. Fla. Aug. 8, 2023); *Echeverri v USCIS*, 2023 WL 5350810, at *2–4 (S.D. Fla. Aug. 21, 2023); *Vijay v. Garland*, 2023 WL 6064326, at *2 (M.D. Fla Sept. 18, 2023); *Soto v. Miller*, 2023 WL 8850747, at *4-5 (E.D. Wash. Dec. 21, 2023).

[7] *See, e.g.*, *Saavedra Estrada v. Mayorkas*, --- F.Supp.3d---, 2023 WL 8096897 (E.D. Pa. Dec. 21, 2023); *Lara-Esperanza v. Mayorkas*, 2023 WL 7003418 (D. Colo. Oct. 24, 2023); *Granados v. United States*, 2023 WL 5831515 (D. Colo. Aug. 23, 2023); *Bamba v. Jaddou*, 2023 WL 5839593 (E.D. Va. Aug. 18, 2023); *Escobar v. Miller*, 2024 WL 98393, at *3 (E.D. Va. Jan. 8, 2024).

interpretation: in this case, has there been "a *decision* or *action* [made by USCIS] regarding *a* waiver" that the Court is barred from "review[ing]"? Upon applying traditional tools of statutory interpretation, the Court concludes for the reasons below that the answer is no. There has been no decision or action regarding a waiver here, and so the Waiver Provision does not preclude judicial review.

***

One "familiar principle of statutory construction" is the "presumption favoring judicial review of administrative action." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (citing *Kucana v. Holder,* 558 U.S. 233, 251 (2010)). This is a "well-settled" and "strong presumption." *Id.* (citing *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 496 (1991)). "[W]hen a statutory provision is reasonably susceptible to divergent interpretation, [courts] adopt the reading that . . . executive determinations generally are subject to judicial review." *Id.* (cleaned up). This presumption of judicial review can be overcome *only* by "clear and convincing" evidence of congressional intent to preclude judicial review. *Id.* (citing *Reno v. Catholic Soc. Servs, Inc.*, 509 U.S. 43, 64 (1993)). Courts have "consistently applied" this presumption of reviewability to immigration statutes. *Id.* (citing *Kucana*, 558 U.S. at 251).

In determining congressional intent, courts rely on traditional tools of statutory interpretation. *Id.* at 1070-72 (considering statutory text, context, and legislative history to determine congressional intent); *see also Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC*, 17 F.4th 88, 98 (11th Cir. 2021) ("[W]e

13

ascertain congressional intent by employing the 'traditional tools of statutory instruction,' as we examine the text of the statute, its structure, its history, and its stated purpose."). In applying such tools, courts begin "with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1190 (11th Cir. 2019).

With this guidance in mind, the Court evaluates the relevant sentence: "No court shall have jurisdiction to review a decision or action by [USCIS] regarding a waiver under this clause." 8 U.S.C. § 1182(a)(9)(B)(v).

First, the Court considers whether USCIS's *non*action or *in*action on Segovia's Waiver Application constitutes a "decision" or "action" on "a" waiver. Neither "decision" nor "action" are defined in the statute (the INA), and thus they are interpreted in accordance with their ordinary meanings. *See Sebelius v. Cloer,* 569 U.S. 369, 376 (2013); *Regions Bank,* 936 F.3d at 1190. Black's Law Dictionary defines "decision" as a "determination [made] after consideration of the facts and law." *See* Black's Law Dictionary (11th ed. 2019). It defines "action" as "the process of doing something; conduct or behavior." *Id. See also* Merriam-Webster Online Dictionary, *Action* (defining "action" as, e.g., "a thing done"; "the accomplishment of a thing usually over a period of time, in stages, or with the possibility of repetition"; or "an act of will").

USCIS's *non*action here is not a "decision" as no determination has been made. Nor is it an "action," as USCIS has not engaged in any process of doing

*anything* to "*a* waiver" (i.e., *Segovia*'s Waiver Application). Put another way, no "thing" has "been done." As such, USCIS's *non*action is not a "decision" or "action" as those words are ordinarily understood. *See Bamba v. Jaddou*, 2023 WL 5839593, at *2 (E.D. Va. Aug. 18, 2023) ("Both definitions infer some affirmative action, not inaction or a failure to act."); *Escobar v. Miller*, 2024 WL 98393, at *3 (E.D. Va. Jan. 8, 2024) (same). Rather, USCIS's *non*action is quite the opposite. To read the terms "decision or action" to mean *in*decision, *in*action, or *non*action is not the common and ordinary meaning of those terms. *See Ohio v. Wright*, 992 F.2d 616, 619 (6th Cir. 1993) ("The words of a statute can be read to mean many things, but they should not be read to mean the exact opposite of what the statute clearly says . . .").[8]

Contrary to this literal reading, Defendants argue that the word "action" encompasses a *failure to act* because *the APA* definition for "agency action" includes "failure to act," as that term is understood under the APA. *See* 5 U.S.C. § 551(13) (defining "agency action" as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or a failure to act"). For a few reasons, the Court rejects this argument. First, the relevant Waiver Provision *of the INA* uses the term "action," not "agency action," the term

---

[8] *See also Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1052 (W.D. Wisc. 2007) (addressing different provision of the INA and noting, "no matter how narrowly a court defines 'action,' it would require an Orwellian twisting of the word to conclude that it means a failure to adjudicate"); *Kamal v. Gonzales*, 547 F. Supp. 2d 869, 874-75 (N.D. Ill. 2008) (addressing different provision of the INA but finding that inaction cannot mean action); *Lui v. Novak*, 509 F. Supp. 2d 1, 7 (D.D.C. 2007) (addressing different provision of the INA but rejecting the argument that "inaction is within the 'plain meaning' of action" because "[t]he established body of administrative law . . . distinguishes between the two").

of art defined in *the APA*. *See Saavedra Estrada v. Mayorkas*, 2023 WL 8096897, at *5 (E.D. Pa. Nov. 21, 2023) ("[I]t must be noted at the outset that although Section 551(13) of the APA contains the tern 'agency action,' Section 1182 of the INA does not. That alone would counsel that Section 551(13) [of the APA's] inclusion of 'failure to act' as agency action is not necessarily transportable into Section 1182 [of the INA].")

Courts have held that the APA's definitions "are only mandatory in the context of the APA itself." *Lansdowne on the Potomac Homeowner's Ass'n Inc. v. OpenBand at Landsowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013) (citing 5 U.S.C. § 551 (stating that the definitions apply "[f]or the purpose of this subchapter")); *Soni v. Jaddou*, 2023 WL 8004292, at *2 (N.D. Ill. Nov. 17, 2023) ("The effective scope of the APA definitions, however, is limited to the APA itself") (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 624 (7th Cir. 2021) (noting that application of the "whole code canon"[9] "rests on a shaky foundation. Appeals to consistency with other areas of the U.S. Code—especially different titles of the Code 'represent a ... risk of judicially overriding legislative assumptions and policies'")).

When Congress intends to incorporate APA definitions into other statutes, it typically does so expressly. *See Hawaiian Tel. Co. v. Pub. Util. Comm'n of Haw.*, 827 F.2d 1264, 1271 (9th Cir. 1987) (finding that when Congress meant to import

[9] The "whole code canon" allows courts to construe *identical* terms across different acts or titles of a legal code consistently. *See K.L. v. R.I. Bd. of Ed.*, 907 F.3d 638, 646 (1st Cir. 2018) (noting, however, that "there is little evidence that treating the United States Code as a single body of consistent law reflects how Congress drafts or even how it tries to draft legislation") (internal quotation omitted).

16

an APA definition into the Communications Act, it did so explicitly three times).
Here, the relevant Waiver Provision of the INA includes no indication that the term
"action" should be given the definition of a different term from a different statute
— "agency action" as defined under the APA. In this case, if Congress intended to
import the definition of "agency action" under the APA to the term "action" under
the INA, it could have stated as much when it significantly amended the INA
through the passage of the Illegal Immigration Reform and Immigrant
Responsibility Act ("IIRAIRA") in 1996, *see* Pub. L. No. 104-208, and specifically
when it amended the INA's definition section. *See Lansdowne*, 713 F.3d at 200
(finding that Congress's decision not to incorporate the APA definition for "order"
into the Communication Act "shows that it did not intend for the APA's limited
definition of that term to apply here"). Under the circumstances, "action" in the
INA cannot be defined by a term of art in the APA where there is no indication of
congressional intent for incorporation of that definition. *See Escobar*, 2024 WL
98393, at *3 ("Because Congress did not define the terms 'decision' and 'action' in
[the Waiver Provision], however, the Court must rely on their ordinary
meanings.").

Indeed, "[r]ather than import[ing] the APA's unique definition of 'agency
action' to a separate statute, it is more appropriate to look within the same statute
for other uses of the relevant terms." *Escobar*, 2024 WL 98393, at *3 (citing *Brown
v. Gardner*, 513 U.S. 115, 118 (1994)). Although there are split decisions in district
courts, multiple courts of appeals have found that the terms "decision or action"

under other provisions of the INA do not encompass agency *in*action. *See Iddir v. Immigr. & Naturalization Serv.*, 301 F.3d 492, 496-98 (7th Cir. 2002) (finding that section 1252 of the INA, which stripped courts of jurisdiction over certain agency "decision[s] or action[s]," "only bars review of actual discretionary decisions to grant or deny relief" rather than situation in which the agency does not act at all); *Gonzales v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021).[10]

In addition, to read "action" in the Waiver Provision to include a failure to act (and thus to mean *in*action) would be to read the statute in a manner that is inconsistent with the primary regulation and other provisions of the INA. If the Waiver Provision bars judicial review of USCIS's failure to adjudicate waiver applications in all instances, then USCIS could accept thousands of dollars in waiver application fees and *never* adjudicate the applications. But the regulation addressing these provisional waiver applications states that USCIS "*will* adjudicate a provisional unlawful presence waiver application" and, if USCIS determines that a noncitizen is not eligible (or if it determines in its discretion that waiver is not warranted), USCIS "*will* deny the waiver application." 8 C.F.R. § 212.7(e)(8) (emphases added) And the initial proposed rule says the same thing. *See* 78 Fed. Reg. 536, 565 (Jan. 3, 2013) (explaining that the final rule will allow applicants to apply before departing the U.S. and that "USCIS *will* adjudicate the provisional unlawful presence waiver") (emphasis added). In addition, the INA's stated

---

[10] Numerous district courts have, in addressing other provisions of the INA, similarly found that "decision or action" does not include *in*action. *See, e.g., supra* n.8 (listing cases).

purpose section provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Thus, this regulation and statutory provision suggest that the Waiver Provision's word "action" should not be read to encompass a failure to act because such a reading would permit USCIS to accept applications (and fees) and never adjudicate such applications — all contrary to the relevant regulation, 8 C.F.R. § 212.7(e)(8), and purpose of the INA, *see* 8 U.S.C. § 1571(b). *See McNary*, 498 U.S. at 496 ("[G]iven our well-settled presumption favoring interpretations of statutes that allow judicial review ... it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review."); *Escobar*, 2024 WL 98393, at *4 (rejecting Government's argument that "action" under the Waiver Provision means "inaction" and noting, "[i]f courts lacked jurisdiction over the agency's failure to act, the agency could unilaterally impose a *de facto* moratorium on all applications") (cleaned up). In short, the Court concludes that nothing suggests that Congress intended to incorporate the APA's limited definition of "agency action" into the INA's Waiver Provision.[11]

Next, Defendants focus on the word "regarding" in the Waiver Provision. § 1182(a)(9)(B)(v) ("No court shall have jurisdiction to review a decision or action

---

[11] In other cases, the Government has argued that plaintiffs cannot have it both ways because either (1) the APA definition of "agency action" applies to the Waiver Provision and thus the court lacks jurisdiction, or (2) the APA definition does not apply at all, in which case there is no cause of action under the APA at all. *See Escobar*, 2024 WL 98393, at *3 n.3 (rejecting this argument). As the *Escobar* Court noted, "The APA provides Plaintiffs with their cause of action; [the Waiver Provision of the INA] is an entirely separate jurisdiction stripping provision. There is no tension between one of those statutes having a defined term of art . . . and the other using a portion of that term in accordance with its ordinary meaning." *Id.*

by [USCIS] *regarding* a waiver . . ."). They argue that the word "regarding" has a "broadening effect," and that this broadening effect renders *any* issue at all related provisional waiver applications outside the bounds of the Court's review.

In support, Defendants cite a recent Supreme Court case, *Patel v. Garland*, 596 U.S. 328 (2022). In *Patel*, the Supreme Court evaluated a different provision of the INA that stripped the court's jurisdiction over "any judgment regarding the granting of relief" in the context of removal proceedings. 596 U.S. 328 (2022). There, the Supreme Court read "any judgment regarding" broadly to mean that the statute stripped jurisdiction, not only over the agency's ultimate decision to grant or deny relief, but also as to any subsidiary factfinding decisions (or "judgments") that led to that final determination.[12] The Supreme Court emphasized that the word "any" expanded the class of "judgments" covered by the statute. Much of the analysis in *Patel* focused on the word "judgment." The Supreme Court also explained that "regarding" broadly meant "relating to" such that "any" decision "relating to" the granting of relief — including underlying factual findings — were beyond the scope of a court's review. *Id.* at 1622.[13]

---

[12] The Supreme Court's recent decision in *Wilkinson v. Garland* clarifies that *Patel* should be read *only* to mean what it held: that, under § 1252(a)(2)(B)(i) and § 1252(a)(2)(D), courts lack jurisdiction to review exclusively factual questions underlying denials of discretionary relief under those provisions. *See* 601 U.S. --- (2024), No. 22-666, slip op. at 8, 10 (U.S. March 19, 2024) (but clarifying that mixed questions of law and fact are reviewable by courts under § 1252(a)(2)(D)).

[13] Clearly, *Patel* is distinguishable from the situation at hand. In *Patel*, the plaintiff challenged a factual determination that informed the denial of Patel's request for relief. Here, Plaintiffs do not challenge any underlying factual determination; they challenge the lack of any decision or action at all. *See Bamba*, 2023 WL 5839593, at *3 ("this case differs fundamentally from *Patel*, with different statutes (Section 1252 versus Section 1182) and different circumstances (an agency finding of fact prior to a judgment versus a failure to ma(ke a decision or act), and for these

But here, reading "regarding" in the very same manner does not help Defendants. The relevant text deprives a court of jurisdiction "to review a decision or action . . . regarding a waiver." § 1182(a)(9)(B)(v). "Regarding" modifies "a decision or action." Thus, the existence of a "decision" or "action" is a necessary precursor to an expansive reading of "regarding." Put another way, even reading "regarding" expansively, there must still be a "decision" or "action" related to, or concerning, "a waiver." Indeed, there must be a decision or action that a court could otherwise "review." There has been no such "decision or action" on Segovia's Waiver Application (such as a subsidiary factual determination, as in *Patel*) that the Court is precluded from reviewing.

Reading "regarding" broadly, some courts have determined that there is no jurisdiction under the Waiver Provision because USCIS's overall scheme for adjudicating *all* provisional waiver applications *generally* constitutes a "decision or action" that is beyond judicial review. But this reading also cuts against the plain text of the statute, which deprives the court of review over a "decision or action . . . regarding *a* waiver." § 1182(a)(9)(B)(v) (emphasis added). The word "a" indicates that the "decision or action" is necessarily related to "a" single waiver — not a class of waiver*s* or series of decision*s* about how waiver*s* should be adjudicated or processed more generally, e.g., as related to policy judgments or resource allocation.[14] *See McFadden v. United States*, 576 U.S. 186, 191 (2015) (explaining

_____

reasons, neither the holding nor the analysis in *Patel* supports withholding all judicial review of the USCIS's alleged failure to act within a reasonable period of time.").

[14] Indeed, these concerns relate to the *merits* of Plaintiffs' unreasonable delay claim.

that the word "a" means "[s]ome undetermined or unspecified *particular*")
(emphasis added); *Niz-Chavez v. Garland*, 583 U.S. 155, 161 (2021) (holding that
"a" connotes a document rather than documents in general).

Moreover, Plaintiffs here are not challenging any of USCIS's various policy
decisions — they are challenging USCIS's alleged unreasonable delay in
adjudicating *Segovia*'s Waiver Application. In addition, any speculation about
policy decisions or resource allocation actions that USCIS has made in processing
or adjudicating I-601A Waiver Applications more generally is hypothetical at this
stage because there is no mention of such hypothetical decision-making in the
Complaint. The Complaint, which the Court takes as true at this stage, alleges that
USCIS has not in any way acted on *Segovia*'s Waiver Application.

Finally, the Court takes time to emphasize again that district courts around
the country have split over this question of whether the Waiver Provision strips the
Court's jurisdiction. (*See supra* nn. 6-7.) The Court considers this reality in light of
the relevant standard. As noted above, in the case of a close call, there is a "well-
settled" and "strong presumption" in favor of judicial review of administrative
activity. *Guerrero-Lasprilla*, 589 U.S. at 229. Only "clear and convincing" evidence
of congressional intent to preclude judicial review can overcome this presumption.
*Id.* Here, for the reasons discussed above, the plain and ordinary meaning of the
statutory text confirms that "action" should not be read to mean *in*action, and thus
judicial review over an unreasonable delay claim is not precluded by the Waiver
Provision. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's

22

language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Based on the statutory interpretation above, the Court cannot find "clear and convincing" evidence that Congress intended to strip courts' ability to review Plaintiffs' unreasonable delay claim sufficient to overcome the strong presumption of judicial review. *See Guerrero-Lasprilla*, 589 U.S. at 229.

## 2. Whether USCIS's Inaction is Committed to Agency Discretion By Law

Having determined that the Waiver Provision of the INA does not preclude judicial review over an unreasonable delay claim, the Court next considers Defendants' second argument: that the APA does not permit judicial review (and thus there is no jurisdiction) because USCIS's action (or inaction here) is "committed to agency discretion by law." *See* 5 U.S.C. § 701(a).

Without question, USCIS's ultimate decision of whether to grant or deny Segovia's Waiver Application is committed to agency discretion by law. *See* 8 U.S.C. § 1182(a)(9)(B)(v) (stating that USCIS "has sole discretion to waive [the accrual of unlawful residence] in the case of an immigrant . . ."); 8 C.F.R. § 212.7(e)(1) (explaining that "USCIS has exclusive jurisdiction to grant a provisional unlawful presence waiver").

But USCIS does not have discretion to determine whether to adjudicate Segovia's Waiver Application *at all. See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004) ("*SUWA*") ("[W]hen an agency is compelled by law to act within a

certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."); *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (finding that USCIS had a duty to adjudicate the plaintiff's U-visa application in a "reasonable period of time" where the statute provided no explicit deadline) ("Ramirez has a right to adjudication for both the waiting list and a U-visa"); *Maciel v. Rice*, 2007 WL 4525143, at *4 (E.D. Cal. Dec. 18, 2007) (explaining that the Government cannot "charge a fee for the adjudication of a[n] . . . application and then argue that it has no duty to adjudicate a properly filed application").

Plaintiffs have alleged that Defendants have "a clear duty pursuant to the Immigration and Nationality Act to adjudicate" Segovia's Waiver Application. (Compl., Doc. 1 ¶ 24.) The relevant regulation states that USCIS "*will*" adjudicate provisional waiver applications, one way or the other. 8 C.F.R. § 212.7(e)(1); *see also Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives*, 78 Fed. Reg. 536, 565 (Jan. 3, 2013) (explaining that the final rule will allow applicants to apply before departing the U.S. and that "USCIS *will* adjudicate the provisional unlawful presence waiver") (emphasis added). As noted previously, USCIS charges applicants fees of $960 for the Form I-601A Waiver Application. *See* 8 C.F.R. § 106.2(25).[15] "USCIS uses these fees *to process applicants' benefit requests*." *See* 78 Fed. Reg. at 549 (emphasis added). Additionally, the APA states that, "within a reasonable time, each agency shall

---

[15] USCIS also requires applicants to pay the immigrant visa processing fee. *See* 8 C.F.R. § 212.7(e).

proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). And, as noted, the APA further requires a reviewing court to compel agency action "unlawfully withheld or *unreasonably delayed*." 5 U.S.C. § 706(1) (emphasis added). Legislative history concerning the passage of the APA indicates that the entire reason for defining "agency action" to encompass a "failure to act" was to *enable* judicial review of both agency action and inaction. *See, e.g.*, S. Rep. No. 79-572, at 198 (1945) (noting that the definition of "agency action" under the APA was meant to "assure the complete coverage of every form of agency power, proceeding, action, or inaction").[16]

Other courts have determined that USCIS has a "nondiscretionary duty to adjudicate" immigration applications, including I-601A applications, "at some point." *See Granados*, 2023 WL 5831515, at *6 (finding that USCIS's nonaction on the plaintiff's I-601A waiver application was not committed to agency discretion and collecting cases);[17] *Bamba*, 2023 WL 5839593, at *3 ("The text of [the Waiver

---

[16] In the face of the statutory and regulatory language, and the legislative history, Defendants argue that they are permitted to not adjudicate Waiver Applications at all because 8 C.F.R. § 212.7(e)(2) also states that USCIS "may" adjudicate applications. But, as noted above, the same regulation elsewhere states in multiple places that USCIS "will" adjudicate applications. The mandatory language is supported by other provisions of the INA and the text, purpose, and legislative history of the APA. Plus, USCIS requires applicants to pay mandatory fees that are used *for the purpose* of processing applications. Moreover, in the case of a conflict between mandatory and permissive regulatory language, at least one Supreme Court case suggests that the mandatory language governs. *See Pierce v. Underwood*, 487 U.S. 552, 569–70 (1988) (affirming Ninth Circuit's decision that Government's argument that permissive language trumped mandatory language was not substantially justified). Finally, in the event of ambiguity, there is a well-established presumption in favor of judicial review. *See Guerrero-Lasprilla*, 589 U.S. at 229.

[17] *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (acknowledging that USCIS has a nondiscretionary duty to adjudicate Form I-526 petitions); *Calderon-Ramirez* 877 F.3d at 276 ("[B]oth parties agree that USCIS has a duty to process" the plaintiff's U-visa petition").

Provision] gives the agency discretion concerning whether they will grant or deny a waiver application, but Congress did not give the agency discretion *not* to process the application.").

Accordingly, the Court finds that Defendants have a nondiscretionary duty to adjudicate Plaintiff Segovia's Waiver Application eventually. Therefore, the challenged behavior (USCIS's nonaction) is not committed to agency discretion by law and judicial review is not precluded.

### B.   Whether Plaintiffs Have Standing

Next, Defendants argue that Plaintiffs lack Article III standing because they cannot establish concrete injury, causation, or redressability. (MTD, Doc. 61 at 12-13.) In particular, Defendants argue that Plaintiff Segovia's injury is really his lack of permanent residence status and that an order compelling USCIS to act would not redress his harm. (*Id.*)

To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) that is "fairly traceable" to the defendant, (3) that is redressable by the Court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

In the Complaint, Plaintiffs allege that they have been "prejudiced by Defendants' undue delay in the processing" of Segovia's Waiver Application because USCIS's failure to adjudicate Segovia's Waiver Application deprives him of the opportunity to pursue permanent resident status through the procedures provided by Congress. (Compl., Doc. 1 ¶ 4.) The Complaint further alleges that Plaintiff Ruiz "is experiencing mental and emotional harm due to the undue delay

in the processing of her husband's" Waiver Application, and that the delay has "exacted grief, hardship, and other injuries flowing from a deprivation of lawful permanent resident status." (*Id.*) In addition, because USCIS has failed to adjudicate Segovia's Waiver Application, Segovia "may be forced to relocate to El Salvador and either be separated from his U.S. citizen spouse and children or have his U.S. citizen spouse and children relocate with him to El Salvador, exposing then to dangerous and impoverished living conditions." (*Id.*) The Complaint also alleges that USCIS's failure to adjudicate the Waiver Application:

> has caused and will further cause Plaintiffs great hardship. Plaintiff Osmin Segovia is unable to seek work authorization while his I-601A application is pending, and Plaintiff Corin Ruiz, along with the Plaintiffs' children, depend entirely on Plaintiff Osmin for financial support. Plaintiff Osmin's ability to obtain lawful permanent resident status and continue to provide for his U.S. citizen spouse and U.S. citizen children depends upon the adjudication of the I-601A Application.

(Compl., Doc. 1 ¶ 20.)

Based on the allegations, taken as true at this stage, Plaintiffs have adequately alleged constitutional injury in that Segovia has been deprived of the opportunity — established by Congress and administered by USCIS — to pursue lawful permanent residence status. They have also alleged adequate injury in Plaintiffs' emotional and financial harm. Plaintiffs have further alleged that this injury is caused by Defendants' failure to adjudicate Segovia's Waiver Application, not just by his lack of LPR status. Finally, this injury related to the alleged delayed

adjudication of Segovia's Waiver Application would be redressed by a court order compelling USCIS to adjudicate the application.

Taking all the allegations as true, Plaintiffs have adequately alleged standing to pursue their unreasonable delay claim. *See Mafundu v. Mayorkas*, 2023 WL 5036142, *5 n.2 (S.D. Fla. Aug, 8, 2023) (rejecting argument that plaintiffs did not have standing because there were "further steps [plaintiff] must take to receive lawful status," and finding that "Defendants' adjudication of the application is preventing Mafundu from potentially accessing the next steps she must take—and an order compelling them to adjudicate it would alleviate this issue"); *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 8 (D.D.C. 2022) ("Defendants do not dispute that an increased delay in adjudication of the Da Costa's Form I-526 is an injury sufficient to support standing"); *Parcha v. Cuccinelli*, 2020 WL 607103, at *3 (E.D. Tex. Feb. 7, 2020) (finding that plaintiffs adequately alleged standing when the plaintiff, an H1-B applicant (Parcha), alleged economic harm resulting from USCIS's failure to adjudicate application and where his wife and children (who were also plaintiffs) alleged that their financial status was tethered to Parcha's).

## C.   Whether the Complaint Fails to State a Claim

To succeed on an unreasonable delay claim on the merits, a plaintiff must show that (1) the agency has a nondiscretionary duty to act and (2) the agency has unreasonably delayed. *SUWA*, 542 U.S. at 63-65.

As to the first requirement, USCIS has a nondiscretionary duty to adjudicate Segovia's Waiver Application at some point as discussed above. *See supra*, Section A.2 (citing 5 U.S.C. § 555(b) (requiring an agency to "proceed to conclude a matter presented to it" within a "reasonable time"); 5 U.S.C. § 706(1) (requiring a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed"); 8 C.F.R. § 212.7(e)(1) (providing that USCIS "will" adjudicate provisional waiver applications)).

In determining whether a plaintiff has adequately alleged the second element — unreasonable delay — courts look to the six "*TRAC* factors" set forth in *Telecomm. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). While the Eleventh Circuit has not expressly adopted the *TRAC* factors, district courts in this Circuit regularly apply the *TRAC* factors in assessing unreasonable delay claims,[18] and both Plaintiffs and Defendants cite these factors in their briefs.

The *TRAC* factors provided the following direction to courts assessing unreasonable delay claims:

    (1)    the time agencies take to make decisions must be governed by a "rule of reason";

    (2)    where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this "rule of reason";

---

[18] *See, e.g.*, *Hidalgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235, 1244 n.4 (N.D. Ga. 2021); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (N.D. Ga. 2019). Other circuits apply these factors as well. *See, e.g.*, *Gonzales v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021); *In re Pesticide Action Network North Am., Nat. Res. Def. Council, Inc.*, 798 F.3d 809, 813 (9th Cir. 2015).

(3)   delays that might be reasonable in the sphere or economic regulation are less tolerable when human health and welfare are at stake;

(4)   the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)   the court should also take into account the nature and extent of the interests prejudiced by the delay; and

(6)   the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations and quotations omitted).

Various courts of appeals have explained that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quoting *Gonzales v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)). *See also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

This is because a court may, at the motion to dismiss stage, "lack sufficient information" to adequately assess the *TRAC* factors. The Fourth Circuit explained in *Gonzales* (a case involving delayed adjudication of the plaintiffs' U-visa petitions) why evaluating these factors on a motion to dismiss is difficult:

While a "first in, first out" approach with enumerated exceptions may be a rule of reason, we do not know enough about how the agency implements its rules and exceptions. We also think that Plaintiffs have

pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by the long wait. The agency may be able to refute these contentions, but at this stage we may review only Plaintiffs' pleadings.

Among the issues that may be important on remand are resource constraints. The agency may well be able to show resource constraints and competing priorities in any number of ways. *In re Barr Lab'y, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991); *see also Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004) (noting that when an agency faces "a backlog of tens of thousands of cases," it "operates in an environment of limited resources, and how it allocates those resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess"). But at this point we cannot rely on the agency's allegations to find as a matter of law that this factor necessarily favors the agency.

985 F.3d at 375 (vacating the district court's dismissal of unreasonable delay claim and remanding for further proceedings, "perhaps including limited discovery").

The Sixth Circuit raised similar concerns with evaluating an unreasonable delay claim at the motion to dismiss stage, noting that the "machinery" of the relevant adjudication process (of U-visas and prewaitlist-work authorization applications) "is known only to USCIS." *Barrios Garcia*, 25 F.4th at 453 ("Clearly, discovery is critical to understanding whether the U-visa process is a systemic line or not.") Discovery was also necessary to "better assess 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.* at 454. The *Barrios Garcia* Court also explained why comparing the plaintiffs' wait time versus the average wait time is not always a helpful barometer: "We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race." *Id.*

In light of these concerns, district courts are split on "whether it is appropriate to analyze the *TRAC* factors at the motion to dismiss stage." *Mondragon Tinoco v. Mayorkas*, 2021 WL 3603373, at *10 (N.D. Ga. Aug, 13, 2021) (Brown, J.) (highlighting cases where courts have addressed the *TRAC* factors on a motion to dismiss, and those where courts have declined to do so).[19]

Here, the Court lacks sufficient information at this stage to conduct a full assessment of the relevant *TRAC* factors to determine whether Defendants' two-and-a-half-year delay in adjudicating Plaintiff Segovia's Waiver Application is unreasonable. *See Mondragon,* 2021 WL 3603373, at *10 (finding that a full assessment of *TRAC* factors was premature at motion to dismiss stage); *Haus v. Nielsen,* 2019 WL 1035870, at *4 (N.D. Ill. Feb. 23, 2018) (same); *Lammers v. Chief, Immigr., USCIS*, 2021 WL 9408916, at *2-3 (M.D. Fla. July 28, 2021) (same); *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 598 (W.D. Tex. 2019) (same); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) (same). Even so,

---

[19] *Compare, e.g., Uranga v. USCIS*, 490 F. Supp. 3d 86, 102-06 (D.D.C. 2020) (finding that plaintiff failed to state a claim for unreasonable delay, as related to different INA provision, after analyzing the *TRAC* factors); *Echeverri*, 2023 WL 5350810, at *5 (reviewing *TRAC* factors and finding that plaintiff failed to state a claim) *Mafundu*, 2023 WL 5036142, at *6-8 (same) *with Haus v. Nielsen,* 2019 WL 1035870, at *4 (N.D. Ill., Feb. 23, 2018) ("[T]he Court is not prepared to hold on a motion to dismiss . . . that the three-year delay in reviewing [the plaintiffs'] U-visa petitions for placement on the waiting list is reasonable as a matter of law"); *Lammers v. Chief, Immigr. Inv. Program, USCIS*, 2021 WL 9408916, at *2-3 (M.D. Fla. July 28, 2021) (finding it premature to apply *TRAC* factors at the motion to dismiss stage); *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 598 (W.D. Tex. 2019) ("[A]t the motion to dismiss stage," it would be "premature to address these [*TRAC*] factors"); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y 2004) ("Although it is entirely possible that th[e] delay is reasonable, there is insufficient information upon which to base such a determination at this stage in the proceedings.").

considering the *TRAC* factors based on the limited information at this stage (the allegations in Plaintiffs' Complaint), the Court finds that Plaintiffs state a plausible claim.

As to the third and fifth factors — related to Plaintiffs' health, welfare, and prejudice — Plaintiffs allege that they have suffered mental and emotional harm, grief and hardship, and economic harm from being stuck in a perpetual holding pattern, especially since Segovia has been unable to seek work authorization pending the adjudication of his Waiver Application, thereby affecting his ability to provide for his family. (Compl., Doc. 1 ¶¶ 4, 20.) Plaintiffs also allege that their access to adequate healthcare and safety is impacted by the delayed adjudication, since the whole family may be required to relocate to El Salvador or be separated from Segovia. (*Id.* ¶ 4.) In short, the Plaintiffs plead facts to show that their interests "implicate health and welfare" and are harmed by the years-long wait. *See Barrios Garcia*, 25 F.4th at 452; *Gonzales*, 985 F.3d at 374. Based on these "factual allegations alone," Plaintiffs adequately state a claim. *See Barrios Garcia*, 25 F.4th at 452 (finding that plaintiffs stated a claim based only on allegations of harm and prejudice, as relevant to the third and fifth *TRAC* factors).

Additionally, as to the first factor — whether the time an agency takes to make a decision is governed by a rule of reason — Defendants have not specified exactly what rules govern the adjudication of I-601A Waiver Applications. While Defendants suggest that these Waiver Applications are adjudicated on a "first in,

first out" manner[20], the Court has no basis at this time to find as a matter of law that USCIS in fact processes applications in this way. Rather, at this point "the machinery of the" I-601A Waiver Application "process[] is known only to USCIS." *Id.* at 453.

As to the second factor, at least some courts have held that, where Congress has *not* provided a specific timetable for adjudication of an immigration benefit, "the second *TRAC* factor is not relevant to an 'unreasonably delayed' analysis." *Id.* (emphasizing that the second *TRAC* factor states that "*where* Congress has provided a timetable . . . then the statutory scheme *may* supply content for this rule of reason") (emphases in original). Indeed, "[t]he violation of a statutory deadline is not required to succeed on a[n] [unreasonable delay] claim." *Id.* at 454; *see also* 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application.").

As to the fourth factor, which involves an assessment of competing priorities, the Court acknowledges that Defendants have cited relevant, legitimate budgetary and personnel constraints flowing from the COVID-19 pandemic, as well as concerns that Plaintiffs are seeking to "jump the line" as the average wait time for adjudication of these Waiver Applications continues to grow. The Court recognizes these competing concerns and the guidance that courts should be

---

[20] (*See* MTD, Doc. 6-1 at 19) (characterizing Plaintiffs as attempting to "jump . . . to the front of the line").

"loathe to second guess" how agencies operate in "environment[s] of limited resources." *Gonzales*, 985 F.3d at 367. But, at this point, the Court cannot rely on these assertions to find as a matter of law that Plaintiffs fail to state a claim. *Id.*

Again, Defendants may well be able to show at a later stage that the delay here was not unreasonable and so defeat Plaintiffs' claim on the merits. At this juncture, however, the Court concludes that Plaintiffs has alleged sufficient facts to state a claim for relief under the APA.

## IV.   CONCLUSION

As discussed above, the Court concludes that the Waiver Provision does not strip the Court of jurisdiction to review Plaintiffs' unreasonable delay claim; that Plaintiffs have sufficiently alleged facts to support standing; and that Plaintiffs state a claim for relief under the APA. Accordingly, Defendants' Motion to Dismiss [Doc. 6] is **DENIED**. Defendants are **ORDERED** to file their Answer within 14 days of the entry of this Order.  The parties are **ORDERED** to file their JPRDP and initial disclosures within 21 days of the entry of this Order. The parties' JPRDP should state whether any discovery is necessary, and if so, the extent of such discovery.  The parties' counsel are further **DIRECTED** to confer no later than April 8, 2024 to discuss the possibility of efficiently resolving this dispute via the processing of Plaintiff's Waiver Application.

**IT IS SO ORDERED** this 21st day of March, 2024.

**Honorable Amy Totenberg**
**United States District Judge**

35